# United States Court of Appeals for the Federal Circuit

2009-1248, -1249

COMAPER CORPORATION,

Plaintiff-Cross Appellant,

v.

ANTEC, INC.,

Defendant-Appellant,

and

BEST BUY CO., INC. and MICRO ELECTRONICS, INC.,

Defendants.

Stephen J. Driscoll, Saul Ewing, LLP, of Philadelphia, Pennsylvania, argued for plaintiff-cross appellant.

Robert P. Andris II, Ropers Majeski, Kohn & Bentley, of Redwood City, California, argued for defendant-appellant. With him on the brief was Lael D. Andara.

Appealed from: United States District Court for the Eastern District of Pennsylvania

Judge Petrese B. Tucker

# United States Court of Appeals for the Federal Circuit

2009-1248, -1249

COMAPER CORPORATION,

Plaintiff-Cross Appellant,

v.

ANTEC, INC.,

Defendant-Appellant,

and

BEST BUY CO., INC. and MICRO ELECTRONICS, INC.,

Defendants.

Appeals from the United States District Court for the Eastern District of Pennsylvania in case no. 05-CV-1103, Judge Petrese B. Tucker.

_____

DECIDED: March 1, 2010

_____

Before RADER, GAJARSA, and DYK, <u>Circuit Judges</u>.

DYK, <u>Circuit Judge</u>.

Antec, Inc. ("Antec") appeals from a final judgment of the United States District Court for the Eastern District of Pennsylvania. A jury found that Antec had willfully infringed claims 1, 2, 7, 12, and 13 of U.S. Patent No. 5,955,955 ("the '955 patent"), owned by Comaper Corp. ("Comaper"), and that independent claims 1 and 12 of the

patent were not invalid as obvious.  However, the jury also found that dependent claims 2, 7, and 13 were obvious.

We uphold the district court's claim constructions and reject Antec's contention that a new trial is required because the district court's claim constructions were in error. However, we conclude that the district court was required to grant a new trial because the jury's verdicts on obviousness were irreconcilably inconsistent.  We therefore affirm in part, vacate in part, and remand for a new trial on invalidity.  We also dismiss the cross-appeal.

BACKGROUND

The '955 patent claims a cooling device designed to mount within the drive bay of a computer.  The device comprises a "case" containing an air movement device, such as a fan.  Openings in the case allow for movement of air between the cool ambient air outside the computer and the warm air inside the computer.  In particular, the device is meant to cool the drive bay region of the computer, where hard disk drives, optical drives, or tape drives may be installed.  Claim 1 of the '955 patent is representative:

> 1.  A cooling device for a computer, said computer having a drive bay region with at least one drive bay slot adapted to receive, said device comrising [sic]:
>
> a case configured to mount within said drive bay slot of said computer such that said case occupies substantially the entire drive bay slot, said case having at least a first opening and at least a second opening, when mounted within said drive bay, said first opening being exposed to ambient air and said second opening being within said drive bay region of said computer;
>
> at least one air movement device mounted within said case, said air movement device being configured in one of two ways, a first way in which said air movement device draws cooling air through said first opening and exhausts substantially all of said cooling air from said case though said second opening into said drive bay region, a

second way in which said air movement device draws air into said case through said second opening from and drive bay region and exhausts it through said first opening; and

power supply means for supplying power to said air movement device.

'955 patent col.5 ll.35–57.

On March 8, 2005, Comaper, owner of the '955 patent, brought suit against Antec for infringement in the United States District Court for the Eastern District of Pennsylvania.[1] Antec is a manufacturer of computer components and accessories. Its accused products are the HD Cooler, the Hard Disk Drive Cooler, and the Hard Disk Cooling System.

On September 19, 2006, the district court construed various disputed terms of the '955 patent. Comaper Corp. v. Antec, Inc., No. 05-CV-1103, 2006 WL 2709382 (E.D. Pa. Sept. 19, 2006) ("Claim Construction Order"). Both sides subsequently filed motions for summary judgment. Comaper moved for summary judgment of infringement; Antec moved for summary judgment of noninfringement and invalidity due to obviousness. The district court denied all of these motions, finding that the existence of genuine issues of material fact precluded summary judgment. Comaper Corp. v. Antec, Inc., No. 05-CV-1103, 2007 WL 2811092, at *5 (E.D. Pa. Sept. 27, 2007) ("Summary Judgment Order").

On October 10, 2007, following a five-day trial, the jury returned a "Special Verdict." It found that Antec had infringed claims 1, 2, 7, 12, and 13 of the '955 patent, and that the infringement was willful. It also found that Antec's proffered prior art devices were in public use, offered for sale, or described in publications more than one

---

[1] Comaper also sued Best Buy Co., Inc. and Micro Electronics, Inc. Neither is a party to this appeal.

year prior to the application for the '955 patent. The jury found that the asserted claims of the '955 patent were not anticipated and that independent claims 1 and 12 were not obvious. However, the jury found that claims 2 and 7, which depend from claim 1, and claim 13, which depends from claim 12, were invalid as obvious. Comaper Corp. v. Antec, Inc., No. 05-CV-1103, 2008 WL 4140384, at *2 (E.D. Pa. Sept. 8, 2008) ("JMOL Order").

On post-trial motions, Antec argued that it was entitled to judgment in its favor on the issues of infringement and invalidity. However, the district court found that Antec had not made a motion for JMOL at the close of evidence pursuant to Fed. R. Civ. P. 50(a), and therefore it had waived the right to make such a motion post-trial under Rule 50(b). Id. at *4–5. The district court also denied Antec's motion for a new trial. The court agreed that the verdicts on obviousness were inconsistent but reconciled the verdicts by concluding that Antec had failed to present sufficient evidence for the jury to find that claims 2, 7, and 13 of the '955 patent were obvious. Id. at *12–13. Following entry of judgment in favor of Comaper, the district court also granted Comaper's request for attorney fees based on the finding of willful infringement, but denied its request for enhanced damages.

Antec timely appealed, and Comaper cross-appeals on the issue of enhanced damages. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I Summary Judgment

Antec first contends that the district court erred in denying Antec's motions for summary judgment of noninfringement and invalidity due to obviousness. The district

court denied Antec's motions because it determined that genuine issues of material fact existed.  See Summary Judgment Order, 2007 WL 2811092, at *4–5.  A denial of summary judgment is not properly reviewable on an appeal from a final judgment entered after trial.  See Hopp v. City of Pittsburgh, 194 F.3d 434, 439 n.3 (3d Cir. 1999); Baughman v. Cooper-Jarrett, Inc., 530 F.2d 529, 532 (3d Cir. 1976), overruled on other grounds by Croker v. Boeing Co., 662 F.2d 975 (3d Cir. 1981); see also State Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1067 (Fed. Cir. 2003); Glaros v. H.H. Robertson Co., 797 F.2d 1564, 1573 (Fed. Cir. 1986).  Antec's challenge to the district court's denial of summary judgment is therefore improper.

## II  Judgment as a Matter of Law

Antec also argues that the district court erred when it denied Antec's motion for JMOL after the jury returned its verdict.  The district court concluded that Antec had waived its right to move for JMOL after trial because it had failed to preserve that right by moving for JMOL at the close of evidence.  JMOL Order, 2008 WL 4140384, at *4–5.

Under Fed. R. Civ. P. 50(b), a party must have first moved for JMOL under Rule 50(a) at the close of all the evidence in order to preserve the right to renew that same JMOL motion after the jury returns its verdict.  See Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co., 89 F.3d 976, 992 (3d Cir. 1996) ("Motions for judgment as a matter of law must be made before submission of the case to the jury . . . ."); Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1172 (3d Cir. 1993) ("In order to preserve an issue for judgment pursuant to Rule 50(b), the moving party must timely move for judgment as a matter of law at the close of the nonmovant's case, pursuant to Rule 50(a), and specify the grounds for that motion.").  Antec contends that in arguing against

Comaper's Rule 50(a) motion, Antec made its position clear to the district court, and that this met the "letter and spirit" of Rule 50(a). It is difficult to see how Antec met the letter and spirit of the rule, however, when it failed to actually take the step of moving for JMOL and argued to the district court that the prior art evidence "establishe[d] at the very least the basis for going . . . to the jury"—a position inconsistent with JMOL. Def.-Appellant's Reply Br. 1. This was not a situation in which the district court suggested that a formal JMOL motion at the close of the evidence was unnecessary. See, e.g., Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 535 (8th Cir. 2006); Riverview Invs., Inc. v. Ottawa Cmty. Improvement Corp., 899 F.2d 474, 477–78 (6th Cir. 1990); Ebker v. Tan Jay Int'l, Ltd., 739 F.2d 812, 823–24 (2d Cir. 1984). The district court thus correctly concluded that Antec had failed to move for JMOL following the close of evidence. This failure constitutes a waiver of Antec's right to JMOL following the jury's verdict.

## III  New Trial

### A  Claim Construction

Antec argues in the alternative that it is entitled to a new trial. It claims first that the district court erred in construing terms of the '955 patent and in instructing the jury as to the meaning of those claim terms.

### 1  "Case"

With regard to the term "case" in the '955 patent, the district court construed it to mean "a structure for containing and holding something."[2] Claim Construction Order,

---

[2]     Both parties on appeal misstate the district court's construction of "case," utilizing the disjunctive "or" in the construction instead of the conjunctive "and." The court's claim construction order and its instructions to the jury both stated that "case"

2006 WL 2709382, at *6.  Antec argues that the district court's claim construction is too broad, and that a "case" requires at least some type of enclosure.  We disagree.  While the embodiment disclosed in the '955 patent includes a six-sided rectangular enclosure, this court has repeatedly cautioned against limiting claims to a preferred embodiment.  See, e.g., Linear Tech. Corp. v. Int'l Trade Comm'n, 566 F.3d 1049, 1058 (Fed. Cir. 2009); Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1187 (Fed. Cir. 1998).  The patent specification does not assign or suggest a particular definition to the term "case."  Therefore, in determining the ordinary and customary meaning of the claim term as viewed by a person of ordinary skill in the art, it is appropriate to consult a general dictionary definition of the word for guidance.  See Phillips v. AWH Corp., 415 F.3d 1303, 1322–23 (Fed. Cir. 2005) (en banc).  A "case" is generally defined, relevant to its use in the '955 patent, as "a box or receptacle to contain or hold something."  Webster's Third New International Dictionary 346 (2002).  The district court's construction of "case" as "a structure for containing and holding something" is thus appropriate.

### 2  "Drive Bay Slot"

The district court construed the term "drive bay slot" to mean "the relatively narrow opening in the housing of the computer that leads to the drive bay."  Claim Construction Order, 2006 WL 2709382, at *6.  Antec argues that the drive bay slot is not the opening in the computer housing but rather the area inside the computer behind the opening where a drive may be installed.  Antec essentially asks us to equate the terms "drive bay" and "drive bay slot," despite their separate use in the '955 patent.  There is

---

meant "a structure for containing and holding something."  See Claim Construction Order, 2006 WL 2709382, at *6 (emphasis added); Transcript at 62, Comaper Corp. v. Antec, Inc., No. 05-CV-1103 (E.D. Pa. Oct. 5, 2007).

2009-1248, -1249                    7

an inference, however, that two different terms used in a patent have different meanings. Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 93 F.3d 1572, 1579 (Fed. Cir. 1996). While this inference is not conclusive, Bancorp Servs., L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367, 1373 (Fed. Cir. 2004), the intrinsic evidence supports the district court's construction that "drive bay" and "drive bay slot" have different meanings.

The meaning of the term "drive bay slot" was made clear during prosecution. During the prosecution of the '955 patent, the application was repeatedly rejected as anticipated by and obvious in light of U.S. Patent No. 5,171,183 ("Pollard"). Pollard disclosed a case module for installing a 3.5-inch form-factor removable-media disk drive into a 5.25-inch drive bay. The module included a cooling unit that would draw in ambient air to cool the drive. Once installed, both the front of the disk drive and the vent for the cooling unit could be seen on the front of the module, such that the drive and vent would together occupy the opening in the computer housing leading to the drive bay in which the module was installed. In order to distinguish the application of the '955 patent from Pollard, the inventors and the examiner agreed that a limitation would be added to the claims wherein the "case occupies substantially the entire drive bay slot"— i.e., unlike Pollard, the cooling unit itself would occupy substantially the entire drive bay slot.[3] Because the phrase "case occupies substantially the entire drive bay slot" was added to distinguish Pollard, the use of the term "slot" in Pollard is significant. Pollard clearly describes a "slot" as the two-dimensional opening in the computer housing: "A common PC enclosure has 5.25 inch form factor slots (5.75 inches wide by 3.25 inches

---

[3] The examiner's stated reason for allowing the '955 patent was that "the case for the cooling device mounted in the drive slot does not provide housing a disk drive which is different from the Pollard et al reference wherein the case houses both the cooling device and the disk drive." J.A. 212.

high) in the face of the enclosure . . . ." Pollard col.1 ll.18–20 (emphasis added). Therefore, it is appropriate for the term "drive bay slot" in the '955 patent to have a similar meaning, and we conclude that the district court correctly construed "drive bay slot" to mean "the relatively narrow opening in the housing of the computer that leads to the drive bay."

### 3 "Second Opening"

Finally, Antec challenges the district court's construction of the term "second opening." The court determined that the term meant "a separate opening that is exposed to the drive bay region." Claim Construction Order, 2006 WL 2709382, at *6. Antec contends that "second opening" must mean "a separate opening in the case located so as to pull or exhaust air from the central area of the drive bay region." See id. at *5. But this construction confuses the term "second opening" with the configuration limitation present in the claims, which requires that the air from the drive bay region be exhausted through either the first or second opening. See '955 patent col.5 ll.47–54. Antec further argues that the second opening must be more than the back side of the first opening. The district court's construction is in fact faithful to this requirement because the district court's construction requires that the second opening be a "separate opening" from the first.

Thus, the district court's construction faithfully tracks the ordinary and customary meaning of the term in light of the intrinsic evidence. We discern no error in the district court's construction of "second opening."

Because the district court did not err in its construction of the terms of the '955 patent, Antec is not entitled to a new trial on that basis. Furthermore, in light of this

claim construction, we cannot say that Antec is entitled to a new trial on the ground that the jury's finding of infringement was against the weight of the evidence.

## B Inconsistent Verdicts

Antec also argues that a new trial is required because of the inconsistent jury verdicts on obviousness. The jury found that independent claims 1 and 12 of the '955 patent were not obvious. However, it also found that claims 2 and 7, which depend from claim 1, and claim 13, which depends from claim 12, were invalid as obvious. These verdicts are plainly inconsistent, as both the district court and Comaper recognize. JMOL Order, 2008 WL 4140384, at *5 ("[T]he jury's verdict was inconsistent."); Pl.-Cross Appellant's Br. 7 ("[T]he verdict did contain an inconsistency with respect to the obviousness of dependent claims 2, 7, and 13 . . . ."). "A broader independent claim cannot be nonobvious where a dependent claim stemming from that independent claim is invalid for obviousness." Callaway Golf Co. v. Acushnet Co., 576 F.3d 1331, 1344 (Fed. Cir. 2009) (citing Ormco Corp. v. Align Tech., Inc., 498 F.3d 1307, 1319 (Fed. Cir. 2007)).

Comaper responds that Antec waived its right to challenge the inconsistent verdicts under Fed. R. Civ. P. 49(b) because it did not raise an objection before the jury was dismissed. The jury in this case returned a special verdict under Rule 49(a), however, not a general verdict with interrogatories. The verdict form was specifically labeled "Special Verdict Form." As Comaper itself recognizes, under Third Circuit law, when a jury returns a special verdict, no contemporaneous objection prior to the dismissal of the jury is required in order to preserve the right on appeal to challenge the verdicts as inconsistent. See Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co., 734

F.2d 133, 144–45 (3d Cir. 1984) ("[N]o decision of this court has precluded appellate review of inconsistencies under a Rule 49(a) [special] verdict in the absence of an objection before the jury was discharged."). Thus, by making its post-verdict motion for a new trial on the ground of inconsistent verdicts, Antec properly preserved this issue for appeal.

Third Circuit law recognizes that where verdicts are genuinely inconsistent and the evidence might support either of the inconsistent verdicts, the appropriate remedy is ordinarily to order an entirely new trial. See Malley-Duff, 734 F.2d at 145 (vacating judgment due to inconsistent special verdicts and ordering a new trial); see also Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 217–18 (3d Cir. 2009) ("[I]f verdicts are genuinely inconsistent and if the evidence might support either of the 'inconsistent' verdicts, the appropriate remedy is ordinarily . . . not simply to accept one verdict and dismiss the other, but to order an entirely new trial." (quoting Mosley v. Wilson, 102 F.3d 85, 91 (3d Cir. 1996) (quotation marks omitted)). Thus, when faced with inconsistent verdicts and the evidence would support either of the inconsistent verdicts, the district court must order a new trial.

Here, the district court concluded that the evidence would not support a verdict of obviousness as to claims 2, 7, and 13 of the '955 patent, and resolved the inconsistency in the jury verdicts by granting Comaper's renewed motion for JMOL. See JMOL Order, 2008 WL 41440384, at *12. See generally Mycogen Plant Sci. v. Monsanto Co., 243 F.3d 1316, 1325–26 (Fed. Cir. 2001). The court determined that the evidence was insufficient to support verdicts of obviousness with respect to claims 2, 7, and 13 because the asserted prior art was not analogous to the invention of the '955 patent and

the prior art was not sufficiently similar to the claims of the '955 patent. JMOL Order, 2008 WL 4140384, at *10–12. We disagree.[4]

The district court erred in concluding that the prior art asserted by Antec was not analogous prior art; indeed, Comaper itself did not make this argument. "Analogous art is that which is relevant to a consideration of obviousness under [35 U.S.C. § 103]." Wang Labs., Inc. v. Toshiba Corp., 993 F.2d 858, 864 (Fed. Cir. 1993). Two criteria are relevant in determining whether prior art is analogous: "(1) whether the art is from the same field of endeavor, regardless of the problem addressed, and (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved." In re Clay, 966 F.2d 656, 658–59 (Fed. Cir. 1992). Undoubtedly, the '955 patent's field of endeavor deals with cooling computers and electronic components.

Antec's asserted prior art references all relate to the same field of endeavor as the '955 patent. Each piece of prior art involves cooling computer electronics using fans to draw cool ambient air. The IBM AS/400 Model 9404 is a computer system with a drive bay-mounted drive module containing a fan that draws outside air into the computer. The Control Data Corp. 910 workstation similarly involves a drive bay-mounted drive module containing a fan. The IBM RISC System/6000 is a computer system with dedicated cooling fans drawing outside air into the computer. The Fujitsu M2311K is a large hard disk drive module with a fan unit from the early 1980s that could

---

[4] Comaper asserts that "if [Antec] wanted to challenge the inconsistent verdict, [it] should have challenged the JMOL that resolved it." Oral Arg. at 23:52–23:56. This court, however, reviews judgments. Fromson v. Advance Offset Plate, Inc., 755 F.2d 1549, 1556 (Fed. Cir. 1985). As such, there was no need for Antec to separately appeal the JMOL order. Antec's arguments that the jury verdicts were irreconcilable and required a new trial are sufficient to preserve this issue for appeal.

be installed into a computer system cabinet. U.S. Patent No. 3,971,877 discloses air filters used in combination with computer fans, which are relevant to the elements added in dependent claims 2 and 13 of the '955 patent. U.S. Patent No. 4,126,269 discloses a fan-ventilated electronics enclosure. U.S. Patent No. 4,744,005 discloses a removable module for cooling an early microcomputer with fans. And finally, U.S. Patent No. 5,210,680 discloses a printed circuit board chassis with a modular cooling device. Because these prior art references are in the same field of endeavor as the '955 patent, they are analogous prior art, and it was thus proper for the jury to consider them on the issue of whether the '955 patent would have been obvious.

The district court also erred in concluding that Antec had "fail[ed to] establish that there is sufficient similarity between the proffered prior art and the claims of the '955 patent, taken as a whole."[5] JMOL Order, 2008 WL 4140384, at *12. What the district court appears to mean is that all of the claim elements of the '955 patent do not appear in a single piece of prior art. However, this standard governs anticipation, not obviousness.

Determining obviousness requires considering whether two or more pieces of prior art could be combined, or a single piece of prior art could be modified, to produce

---

[5] The court supported its conclusion with a summary analysis of only three of the eight pieces of prior art listed above. With regard to the Fujitsu M2311K, for example, the court stated only:

> Finally, Antec sought to establish obviousness by presenting evidence that the Fujitsu Device contains all element [sic] of the '955 patent except the "second opening." Again such a showing does not establish the factual requirements for a conclusion of obviousness.

JMOL Order, 2008 WL 4140384, at *12. Similarly, with regard to the IBM RISC System/6000, the court noted that Antec's showing was insufficient where the "drive bay slot" element was missing. See id.

the claimed invention. This analysis typically invokes the familiar teaching-suggestion-motivation ("TSM") test, asking whether a person having ordinary skill in the art would have found some teaching, suggestion, or motivation to combine or modify the prior art references. Pfizer, Inc. v. Apotex, Inc., 480 F.3d 1348, 1362 (Fed. Cir. 2007); see also Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc., 520 F.3d 1358, 1364–65 (Fed. Cir. 2008) (noting that the TSM test, flexibly applied, remains an important tool in an obviousness analysis). The Supreme Court in KSR International Co. v. Teleflex, Inc. emphasized that "[c]ommon sense teaches . . . that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." 550 U.S. 398, 420 (2007). Thus,

> [w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination was obvious to try might show that it was obvious under [35 U.S.C.] § 103.

Id. at 421.

With the correct test in mind, there is no question that there is ample evidence in the record supporting the jury's verdicts that claims 2, 7, and 13 of the '955 patent would have been obvious. The district court recognized that Antec had provided extensive claim-by-claim and element-by-element comparisons between numerous prior art references and the claims of the '955 patent. JMOL Order, 2008 WL 4140384, at *8–9 (acknowledging that "[i]n comparing the differences between the claimed invention and the prior art, Antec did indeed analyze each claim," and then providing a detailed listing

of Antec's experts' comparisons for three of the prior art devices). In addition to providing lengthy testimony regarding the prior art, Antec introduced physical exhibits of many of the prior art devices. The following example is adequate to demonstrate that the jury could have found obviousness based on a motivation to modify the prior art.

The IBM AS/400 Model 9404 ("AS/400") is a prior art computer system, circa 1990, with a drive bay region containing multiple drive bays.[6] A pluggable disk drive module including a fan may be installed within each drive bay. The district court did not address the AS/400 in its order granting JMOL and did not explain why the AS/400 did not render the devices of claims 2, 7, and 13 of the '955 patent obvious. The picture below shows the AS/400 with its front cover removed to expose the drive bays. Three drive bays are occupied and one is empty.



IBM AS/400 System with Drive Bays Exposed

---

[6] The district court instructed the jury that "drive bay" means "the system space reserved for installation of any type of drive," Transcript at 85–86, Comaper Corp. v. Antec, Inc., No. 05-CV-1103 (E.D. Pa. Oct. 5, 2007), and "drive bay region" means "that space in and immediately adjacent to the drive bays," id. at 63.

The disk drive modules each contain a hard disk drive, a fan, and additional circuitry to allow the module to interface with the computer system for data and power. The two images below show the front and back sides of the disk drive module.





IBM AS/400 Drive Module: Front Side   IBM AS/400 Drive Module: Back Side

The jury was shown a complete AS/400 system, including a drive module, at trial. See J.A. 501.[7] Antec's expert identified a "direct analog" to the "drive bay slot" element of the '955 patent on the AS/400 system. J.A. 506. Antec's expert also testified that the AS/400 drive module contains a "case" that "substantially fill[s] . . . [the] drive bay slot[]," an "air movement device" in the fan, a "first opening" on the front side, a "second opening" on the back side, and a "power supply means" at the power connector on the back side. J.A. 502. He furthermore testified that when the drive module is installed in the AS/400, "the fan on the back is configured . . . to draw air from the outside through the module out to the back." J.A. 501. In other words, he testified that the AS/400 is configured in the "first way" as described in the '955 patent, in which cool air is drawn in from the outside. See '955 patent col.5 ll.47–51. Moreover, "there is a channel in the back . . . and [the module] pushes the air, it pulls the air through . . . the module and out

---

[7] The pictures of these computers were apparently not the exhibits in evidence, but appear in the Joint Appendix. The parties do not appear to dispute that the pictures accurately represent the physical devices that were before the jury.

to the back . . . where there is a channel that is shared by all of the drive bays." J.A. 501–02. Thus, "substantially all of said cooling air [is exhausted] from said case through said second opening into said drive bay region." See '955 patent col.5 ll.49–51. In this way, the AS/400 drive module cools the computer system, particularly the drive bay region.

The jury could have credited the testimony of Antec's expert and relied on its own assessment of the AS/400 exhibits shown at trial to conclude that claims 2, 7, and 13 of the '955 patent would have been obvious to a person having ordinary skill in the art in light of the AS/400 drive module even if, as Comaper argues, every element in claim 1 of the '955 patent was not present in the AS/400 device.

In summary, the jury found that independent claims 1 and 12 were not obvious, while dependent claims 2, 7, and 13 were obvious. Under the circumstances of this case, Antec is correct that the jury's verdicts on obviousness reflect an irreconcilable inconsistency. Accordingly, we vacate the judgment of the district court and remand for a new trial on invalidity.[8]

CONCLUSION

For the aforementioned reasons, we affirm in part, vacate in part, and remand for a new trial on invalidity. Comaper's cross-appeal is dismissed.

AFFIRMED IN PART, VACATED IN PART, and REMANDED;

---

[8] Antec also challenges the award of attorney fees and Comaper appeals from the denial of enhanced damages. Antec points out that there cannot be enhanced damages or attorney fees based on a theory of willful infringement unless its actions were objectively unreasonable. See In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). In light of our disposition, however, we do not reach Antec's challenge to the district court's award of attorney fees and dismiss Comaper's cross-appeal on the denial of enhanced damages as moot.

<u>CROSS-APPEAL DISMISSED</u>

COSTS

No costs.